## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | | |
|---|---|---|
| WILLIAM D. HUGHLEY, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE NO.: 5:14-CV-00350 (LJA) |
| | : | |
| UPSON COUNTY BOARD OF | : | |
| COMMISSIONERS, *et al.*, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## ORDER

Before the Court are two Motions to Dismiss Plaintiff's Amended Complaint filed by Defendant Upson County Board of Commissioners ("Defendant Board") and Defendants Judge Christopher Edwards, Judge W. Fletcher Sams, Judge Tommy R.. Hankinson, and Judge Robert Mallory Crawford ("Defendant Judges") (collectively "Defendants"). (Docs. 8 and 12). For the reasons that follow, the motions are **GRANTED**.

I.          **BACKGROUND**

Plaintiff William D. Hughley is a fifty-two-year-old African American male who was employed as an associate magistrate judge in Upson County, Georgia, from 1991 until he was terminated on or about August 5, 2013. (*See* Doc. 7 ¶¶ 4, 14). Plaintiff contends that he was compelled to take action against a local police officer named Phillip Tobin ("Officer Tobin") because he allegedly gave false or fabricated evidence in support of arrest warrant applications before Plaintiff. (*Id.* ¶ 15). Plaintiff and Chief Magistrate Judge Danny Bentley ("Chief Magistrate Bentley") met with Police Chief Dan Greathouse ("Chief Greathouse") about Officer Tobin's behavior; but after Chief Greathouse took no action against Officer Tobin, Plaintiff and Chief Magistrate Bentley banned Officer Tobin from the magistrate court "to protect the public from illegal warrants." (*Id.*

1

¶¶ 15, 16)  Plaintiff avers that Defendant Judges became upset with him because, as a result of the ban, Officer Tobin began making his arrest warrant applications in the Superior Court.  (*Id.*)  This, Plaintiff states, increased the work load of the District Judges. (*Id.*)  Plaintiff claims that due to their anger at him, the Defendant Judges determined to remove Plaintiff from his position and to replace Plaintiff with a Caucasian woman, Jan Streetman ("Streetman").  (*Id.* ¶ 17).  Plaintiff does not specify who ultimately replaced him as associate magistrate judge.

Plaintiff contends that, in addition to wanting him removed because of the Officer Tobin situation, Judge Crawford wanted him removed because of his race.  Plaintiff alleges that Judge Crawford has a history of "racial animosity" towards him. (*Id.* ¶ 18).  According to Plaintiff, in 1991, Judge Wilbur D. Owens, Jr. ("Judge Owens") entered an order "mandating the appointment of a minority associate magistrate judge[.]"  (*Id.* ¶ 14).  Judge Crawford, then a representative for Upson County in the Georgia General Assembly, advised Vivian Hammock ("Chief Magistrate Hammock"), the Chief Magistrate Judge at the time, that "Judge Owens did not have authority to require the Board to hire Plaintiff."  (*Id.* ¶ 19).  Plaintiff contends that he "had to file a grievance with the Georgia Supreme Court because Hammock refuse [sic] to allow Plaintiff to do his job as judge." (*Id.*)  Plaintiff asserts that, ultimately, "[t]he Georgia Supreme Court forced Hammock to allow Plaintiff to do his job as magistrate judge."  (*Id.*)[1]  Plaintiff avers that, in 2013, Judge Crawford sought to advance the plan to unseat Plaintiff by discussing the issue with Streetman and David Dunaway, an attorney who previously represented the Defendant Board in at least one discrimination lawsuit.  (*Id.* ¶ 18).

Plaintiff further alleges that the Defendants complained to the Judicial Qualifications Commission ("JQC") about Plaintiff, "falsely stat[ing] that Plaintiff was not properly admitted as a magistrate judge."  (*Id.* ¶ 20).  As a result, in a letter dated July 23, 2013, the JQC requested that Plaintiff submit evidence of approval of his appointment.  (*Id.; see also* Doc. 1-3).  In a letter dated July 29, 2013 to Judge Edwards, Chief Magistrate Bentley requested that the judges of the Superior Court consent to his appointment of Plaintiff as an associate magistrate judge.  (Doc. 7 ¶ 21; *see also* Doc. 1-4).  On July 30, 2013, Judge Edwards sent an email to Judges Sams, Hankinson, and

---

[1] Plaintiff fails to identify the matter number or pertinent record entries in the grievance action he allegedly initiated in the Georgia Supreme Court or specific facts regarding the circumstances surrounding his ultimate appointment in 1991.

Crawford requesting that they, "please advise [him] by email or letter delivered by the close of business Friday[,] August 2, 2013, of [their] vote to approve, disapprove, or abstain from voting on Judge Bentley's request for Judge Hughley's approval." (*See* Doc. 7 ¶ 22; *see also* Doc. 1-5).  In a letter dated August 5, 2013, Judge Edwards informed Chief Magistrate Bentley, "[t]here was not a majority vote of a least three judges favoring approval of William D. Hughley's appointment. Therefore, William D. Hughley's appointment is not approved under OCGA 15-10-20 or any other law." (*See* Doc. 7 ¶ 23; *see also* Doc. 1-6).  Section 15-10-20 of the Georgia Code provides in relevant part, "Magistrates other than the chief magistrate shall be appointed by the chief magistrate with the consent of the judges of superior court.  O.C.G.A. § 15-10-20(d).  In a Separation Notice dated August 20, 2013, Plaintiff was formally informed that "Upson County Superior Court judges voted not to approve Mr. Hughley's appointment as Associate Magistrate Judge [u]nder OCGA 15-10-20 or any other law." (Doc. 1-7).

On January 9, 2014, Plaintiff filed a timely charge of discrimination based on race, age and retaliation with the Equal Employment Opportunity Commission ("EEOC") in accordance with Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and 42 U.S.C. § 1981 ("Section 1981" or "§ 1981").  (Doc. 1-1).  On August 26, 2014, the EEOC issued to Plaintiff his Notice of Right to Sue.  (Doc. 1-2).  Plaintiff filed his original complaint in this action within ninety (90) days thereafter on October 6, 2014, and filed an Amended Complaint on October 11, 2014. (Docs 1 and 7).  In the Amended Complaint, Plaintiff raises claims under The Civil Rights Act of 1877, 42 U.S.C. § 1983 ("Section 1983" or "§ 1983") against the Defendant Board and Defendant Judges for (1) discrimination based on race, color, gender, national origin and retaliation, in violation of Title VII, 42 U.S.C. § 1981A, and Section 1981; (2) age discrimination, in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq.* ("ADEA"); (3) violation of the equal protection clause of the Fourteenth Amendment; and (4) violation of his First Amendment rights. (Doc 7 ).  Plaintiff is seeking compensatory damages, punitive damages, reinstatement to his position as magistrate judge, and attorney's fees and expenses.  (*Id.*).  In sum, Plaintiff alleges that he was "fired from his position as magistrate judge because he is an African-American man[,]" and "refused to allow Officer Tobin in his courtroom to obtain warrants." (*Id.* ¶ 23).  Further, Plaintiff contends that the Defendant Board "approved and ratified the action" of

Defendant Judges.  (*Id.*)

Defendant Judges move to dismiss Plaintiff's Amended Complaint on the grounds that: (1) Plaintiff has failed to allege sufficient facts to plausibly support his claims; (2) Plaintiff, as an "appointee on a policy-making level," is not a covered employee under Title VII; (3) Defendant Judges do not meet the definition of "employer" under Title VII; (4) Plaintiff fails to establish a *prima facie* Title VII case because he fails to plead that he was either replaced by a person outside his protected class or treated less favorably than a similarly-situated individual outside his protected class; (5) Defendant Judges are relieved from liability under Title VII because Plaintiff, himself, proffers their nondiscriminatory reason for not approving his reappointment; (6) Plaintiff's Title VII claims based on color, national origin, gender or retaliation must be dismissed for failure to exhaust administrative remedies; (7) Eleventh Amendment immunity protects Defendant Judges in their official capacities from Plaintiff's claims under the ADEA, § 1981, the First and Fourteenth Amendments; and (8) qualified immunity protects Defendant Judges in their individual capacities from claims under § 1981, the First and Fourteenth Amendments.  (Docs. 12 and 18).

Defendant Board moves to dismiss Plaintiff's Amended Complaint on similar grounds. Specifically, Defendant Board contends that (1) it made no decisions regarding Plaintiff's employment, nor did it have authority to do so under Georgia law; (2) Plaintiff fails to plausibly state claims under Title VII, § 1981, the ADEA, the First Amendment, or the Fourteenth Amendment; (3) punitive damages are not recoverable against a governmental entity under Title VII, the ADEA, or § 1983; and (4) attorney's fees and expenses are not recoverable because Plaintiff's substantive claims should be dismissed.  (Docs. 8 and 17).

## DISCUSSION

### I.  <u>LEGAL STANDARD</u>

Federal rule of Civil Procedure 12(b)(6) allows a party to assert the defense of failure to state a claim upon which relief can be granted.  To survive a motion to dismiss under Rule 12(b)(6), the complaint must plead enough facts to state a claim to relief that is plausible—not just conceivable—on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  To establish a plausible

claim for relief, a complaint must contain "well-pleaded facts" that permit the court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Accordingly, a complaint is not sufficient "if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* at 678 (internal citations and quotations omitted).

The "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Iqbal*, 556 U.S. at 678. While notice pleading is a liberal standard, "it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79. A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). Moreover, when evaluating the sufficiency of a complaint, the Court must "make reasonable inferences in plaintiff's favor"; however, the Court is "not required to draw plaintiff's inference[s]." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (quoting *Aldana v. Del Monte Fresh Produce, N.A., Inc.,* 416 F.3d 1242 (11th Cir. 2005)), abrogated on other grounds by *Mohamad v. Palestinian Auth.*, 132 S. Ct. 1702 (2012)).

## II. <u>ANALYSIS</u>

### A. Title VII and 1981 Claims

Plaintiff has failed to allege sufficient facts to support his Title VII and §1981[2] claims. First, Plaintiff has failed to plead facts that establish that either Defendant Board or Defendant Judges qualifies as an "employer" under Title VII. [3] Title VII defines an employer as a "person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year . . . ." 42 U.S.C. § 2000e(b). The Supreme Court has held that "the threshold number of employees for application

---

[2] As discussed in Section II.C, Plaintiff's §1981 claim is not properly pled. Nonetheless, the Court will examine the merits of the claim.

[3] The Court notes that Section 1981 does not have an employee-numerosity requirement. *See* 42 U.S.C. § 1981. Further, the Court notes that Defendant Judges also move to dismiss Plaintiff's Amended Complaint on the grounds that (1) he fails to allege that he is not exempt from Title VII and ADEA protections as an appointee on a policy-making level; and (2) Title VII does not cognize individual liability. The Court's consideration of the employee-numerosity requirement under Title VII and the ADEA, however, suffices to demonstrate Plaintiff's failure to plead essential elements of his claims under either statute.

of Title VII is an element of a plaintiff's claim for relief, not a jurisdictional issue." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516 (2006); *see also Faulkner v. Woods Transp., Inc.*, 174 F. App'x 525, 528 (11th Cir. 2006) ("Title VII's employee-numerosity requirement is an element of the plaintiff's claim.").

Rather than addressing the numerosity requirement of Title VII, Plaintiff argues that Defendant Judges functioned as his employers because they set the salaries of magistrate judges, and have authority to remove Plaintiff from his office as an associate magistrate. (Doc. 16 at 14). Because, however, the employee-numerosity requirement is a necessary element of Plaintiff's Title VII claim and because Plaintiff has failed to plead that Defendants have the requisite number of employees to qualify as employers under the above-referenced statutes, Plaintiff has failed to allege sufficient facts to support his Title VII claim.

Even if Plaintiff had alleged facts to establish the numerosity requirement, his claim would still fail as he has failed to allege facts to establish the elements of his Title VII and §1981 claims. Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Section 1981, like Title VII, prohibits discrimination on the basis of race. The statute provides that "all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens. . . ." 42 U.S.C. § 1981(a).

The elements are the same for discrimination claims brought under Title VII and § 1981. *See Rice-Lamar v. City of Ft. Lauderdale, Fla.*, 232 F.3d 836, 844 n. 11 (11th Cir. 2000)). To state a claim for race discrimination, a plaintiff must show that: (1) he is a member of a protected class; (2) he was subject to an adverse employment action; (3) his employer treated similarly situated employees outside his protected class more favorably the he was treated; and (4) he was qualified for the job. *Surtain*, 789 F.3d at 1244 n.3; *see also Burke-Fowler v. Orange Cnty. Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006).

Here, Plaintiff has pled sufficient facts to allege that he, as an African American, is a member of a protected class, that he was subjected to an adverse employment action when he was

not reappointed to his position as a magistrate judge and that he, arguably, was qualified for the job as magistrate judge as he had performed the function for approximately 12 years and was recommended for reappointment by the Chief Magistrate.  Plaintiff, however, has failed to allege any facts to establish that he was treated differently than similarly situated non-African American employees. Furthermore, while Plaintiff alleges that there were discussions of hiring a white woman to take his place, he does not provide any facts about who ultimately got the job. Accordingly, Plaintiff has failed to state a claim for discrimination based on race, or for unlawful retaliation under either Title VII or Section 1981.

### B. ADEA Claim

Like Plaintiff's Title VII and §1981 claims, Plaintiff's ADEA claim fails because Plaintiff has failed to allege facts related to the numerosity requirement.  The ADEA defines an employer "as a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year…." 29 U.S.C. § 630(b).  Plaintiff has failed to set forth any facts regarding the number of persons employed by the Court or the Board.  Accordingly, he has failed to allege sufficient facts to support his claim.

Even if Plaintiff had sufficiently alleged the numerosity element, his claim would still fail. The ADEA prohibits employers from discriminating against an employee on the basis of age.  *See* 29 U.S.C. §§623(a)(1).  The ADEA applies to "individuals [who are] at least 40 years of age."  29 U.S.C. § 631(a).  A plaintiff can establish an inference of intentional age discrimination by pleading that: (1) he was a member of a protected age group; (2) he was subjected to an adverse employment action; (3) he was qualified to do the job; and (4) he was replaced by a younger individual.  *See Chapman v. Al Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000). Critically, the plaintiff must also prove that age was the "but-for" cause of the adverse employment decision.  *See Sims v. MVM, Inc.*, 704 F.3d 1327, 1332 (11th Cir. 2013).

Plaintiff has pled sufficient facts to allege that he, at age 52,  is a member of a protected age group, that he was subject to an adverse employment action when he was not reappointed, and that he, arguably was qualified for the job as a magistrate judge having been in the position for 12 years

and having the recommendation of his Chief.  Plaintiff, however, has failed to allege the age of the person who actually replaced him, or any facts demonstrating that his age played a role in the decision to not reappoint him.  *See Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282-83 (11th Cir. 2007) (complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory") (citations omitted); *Chapman*, 229 F.3d at 1024. ("[T]he plaintiff's age must have actually played a role in the employer's decision[-]making process and had a determinative influence on the outcome.").  As such, the Court is unable to reasonably infer that Defendant Judges "violated the but-for standard set forth in the ADEA."  *See Smith v. CH2M Hill, Inc.*, 521 F. App'x 773, 775 (11th Cir. 2013).  Accordingly, Plaintiff has failed to state a claim under the ADEA.

### C.  Claims Pursuant to Sections 1981 and 1983 and Constitutional Claims

"Section 1983 provides a mechanism for seeking redress for alleged deprivations of federal constitutional and federal statutory rights by persons acting under color of state law." *Thomas v. City of Columbus*, 198 F. Supp. 2d 1360, 1365 (M.D. Ga. 2002) aff'd, 54 F App'x 685 (11th Cir. 2002). Furthermore, "Section 1983 constitutes the exclusive remedy against state actors for violations of the rights contained in § 1981." *Butts v. Cty. of Volusia*, 222 F.3d 891, 893 (11th Cir. 2000) (citing *Jett v. Dallas Independent School District*, 491 U.S. 701, 731-732, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989)). Moreover, § 1983 is not a stand-alone remedy, but is "merely a vehicle" for effectuating every person's right to "sue those acting under color of state law for violations of federal constitutional and statutory provisions." *Williams v. Bd. of Regents of Univ. Sys. of Ga.,* 477 F.3d 1282, 1299 (11th Cir. 2007) (internal citation omitted*); see also Okla. City v. Tuttle*, 471 U.S. 808, 816, 105 S. Ct. 2427, 2432, 85 L. Ed. 2d 791 (1985) (Section 1983 "creates no substantive rights, but merely provides a remedy for deprivations of federal rights created elsewhere."). As such,  the Court need not reach the merits of Plaintiff's §1981, §1983, Fourteenth Amendment, or First Amendment claims as they are improperly pled.

Even if properly pled, Plaintiff's §1981, Fourteenth Amendment, and First Amendment claims, as well as his §1983 claims would fail on the merits.   As discussed above in Section II.A, Plaintiff fails to allege sufficient facts to establish the elements of a §1981 claim.  Likewise, Plaintiff fails to

allege sufficient facts to establish a violation of the Fourteenth Amendment.  In order to establish a Fourteenth Amendment claim, Plaintiff "must show a purpose or intent to discriminate in proving equal protection violation based on racial discrimination." *Id.* at 1479 n.8 (citing *Arnold v. Bd. Of Education of Escambia Cnty., Ala.*, 880 F.2d 305 (11th Cir. 1989), overruled on other grounds as recognized in *Randall v. Scott,* 610 F.3d 701, 709 (11th Cir. 2010).  Plaintiff's only allegations that reasonably could go to intent are that (1) "[u]pon information and belief, Judge Crawford continues to hold racial animosity towards Plaintiff because Judge Owens required The Board to hire Plaintiff"; and (2) that he was "fired from his position as magistrate judge because he is an African-American man."  (Doc. 7 ¶¶ 18, 23).  Such conclusory allegations, however, lack sufficient factual detail to support a reasonable inference that individual members of Defendant Board possessed the requisite intent to discriminate against Plaintiff because of his race.

Plaintiff also has failed to reach the elements of a First Amendment retaliation claim.  To establish a claim for First Amendment retaliation, a plaintiff must show:

> (1) the employee's speech is on a matter of public concern; (2) the employee's First Amendment interest in engaging in the speech outweighs the employer's interest in prohibiting the speech to promote the efficiency of the public services it performs through its employees; and (3) the employee's speech played a "substantial part" in the employer's decision to demote or discharge the employee. Once the employee succeeds in showing the preceding factors, the burden then shifts to the employer to show, by a preponderance of the evidence, that "it would have reached the same decision ... even in the absence of the protected conduct."

*Anderson v. Burke County, Ga.,* 239 F.3d 1216, 1219 (11th Cir.2001) (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977)).  "The first two steps are questions of law; the final two steps are questions of fact designed to determine whether the alleged adverse employment action was in retaliation for the protected speech."  *Cooke v. Gwinnett Cnty. Sch. Dist.,*414 F.3d 1313 (11th Cir. 2005) (internal citation and quotation omitted).

Plaintiff's claim fails because he was not engaging in protected speech when he admonished and banned Officer Tobin.  The threshold question here is "whether [Plaintiff] spoke as a citizen on a matter of public concern. If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." *Garcetti v. Ceballos*, 547 U.S. 410, 126 S.Ct.

1951, 1958, 164 L.Ed.2d 689 (2006) (citations omitted).  "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 421.  As the Eleventh Circuit stated it, the Court must "consider whether the speech at issue was made primarily in the employee's role as citizen, or primarily in the role of employee." *Morgan v. Ford,* 6 F.3d 750, 754 (11th Cir.1993) (citations and internal quotations omitted)).  Plaintiff, acting within his role and authority as a magistrate judge, first admonished Officer Tobin for presenting false testimony and, when Officer Tobin's superior failed to discipline him, Plaintiff and the Chief Magistrate banned Officer Tobin from presenting warrants in Magistrate Court.  Therefore, Plaintiff was clearly acting as an employee when he "spoke," and his First Amendment claim fails.

As discussed above, §1983 is not a stand-alone remedy. To establish a claim under § 1983, a plaintiff must prove that: (1) the defendant deprived him of a right secured by the United States Constitution or federal laws, and (2) the defendant acted under color of state law in committing the deprivation.  *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150 (1970).  As Plaintiff has failed to establish that Defendants deprived him of such a right, his §1983 claim also would fail on the merits.

### A.  CONCLUSION

Based on the foregoing, Defendant Board's Motion to Dismiss, (Doc. 8) is GRANTED without prejudice, and Defendants Judge Christopher Edwards, Judge W. Fletcher Sams, Judge Tommy R. Hankinson, and Judge Robert Mallory Crawford's Motion to Dismiss (Doc. 12) is GRANTED without prejudice.

**SO ORDERED**, this __31st__ day of March, 2016.

   /s/ Leslie J. Abrams

**LESLIE J. ABRAMS, JUDGE**
**UNITED STATES DISTRICT COURT**